1  ARNOLDO CASILLAS, ESQ., SBN 158519
2  DENISSE O. GASTÉLUM, ESQ., SBN 282771
   **CASILLAS & ASSOCIATES**
3  3777 Long Beach Blvd., Third Floor
   Long Beach, CA 90807
4  Tel: (562) 203-3030; Fax: (323) 297-2833
5  Email: acasillas@casillaslegal.com
          dgastelum@casillaslegal.com
6
7  Attorneys for Plaintiffs, ESTATE OF ERICK DE ANDA, by and through successor
   in interest, Enrique de Anda Garcia; ENRIQUE DE ANDA GARCIA, individually
8
9              **UNITED STATES DISTRICT COURT**
10        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11 | ESTATE OF ERICK DE ANDA, by     ) **CASE NO.**
12 | and through successor in interest, )
   | Enrique de Anda Garcia; ENRIQUE  ) **COMPLAINT FOR DAMAGES**
13 | DE ANDA GARCIA, individually,    )
14 |                                  )   1. Failure to Provide Medical Care,
   |              Plaintiffs,         )      Fourteenth Amendment Violation
15 |                                  )      (42 U.S.C. § 1983)
16 |  vs.                             )   2. Failure to Protect from Harm,
   |                                  )      Fourteenth Amendment Violation
17 | RAYMOND HERR, TAYLOR             )      (42 U.S.C. § 1983)
18 | FITHIAN, KIP HALLMAN,            )   3. Deprivation of Substantive Due
   | MARIANNE ROWE, ELIZABETH         )      Process, First and Fourteenth
19 | FALCON, CINDY WATSON,            )      Amendment Violation
20 | YVONNE MAXFIELD, JODEL           )      (42 U.S.C. § 1983)
   | JENCKS, CALIFORNIA FORENSIC      )   4. Negligent Supervision, Training,
21 | MEDICAL GROUP, INC., STEVE       )      Hiring, Retention (County of
22 | BERNAL, JOHN MIHU, JAMES         )      Monterey)
   | BASS, DAVID COOPER, DAVID        )   5. Negligent Supervision, Training,
23 | RAMON, MONTEREY COUNTY,          )      Hiring, Retention (CFMG)
24 | MONTEREY COUNTY SHERIFF'S        )   6. Wrongful Death
   | OFFICE, DOES 1-10.               )   7. State Civil Rights Violation (Cal.
25 |                                  )      Civ. Code § 52.1)
26 |              Defendants.         )   8. Survivorship Action and Request for
27 | _____ )      Punitive Damages
                                      )
28                                       **DEMAND FOR JURY TRIAL**

1

**COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs ESTATE OF ERICK DE ANDA, by and through successor in interest, ENRIQUE DE ANDA GARCIA, and ENRIQUE DE ANDA GARCIA, individually, and allege as follows:

**INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the death of Erick de Anda on September 16, 2015, and to bring to public light the deliberate disregard for public safety carried out by the individual defendants in the present action.

2.      This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution which resulted in the death of Erick de Anda September 16, 2015.

3.      Erick was a mentally ill 24-year-old young man, who suffered from suicidal ideations. On September 16, 2015, Erick de Anda committed suicide by hanging himself from a bed sheet in the isolation cell of the Monterey County Jail.

4.      Long before Erick de Anda's death, each of the individually named defendants from CFMG and from Monterey County knew that there existed at the Monterey County jail a great suicide hazard to mentally ill inmates.  This hazard consisted of a total disregard by jail staff for mentally ill inmates who posed a risk of suicide and inmate cells for mentally ill inmates which contained easy access to hanging points which could be used for suicide.

5.      The individuals named in the present lawsuit were repeatedly put on notice of this great hazard to mentally ill inmates through a long history of hanging suicides, through a class-action lawsuit targeting inmate suicide, through warnings from their own experts regarding the suicide risks, through a court order granting a preliminary injunction which directed them to remove hanging points, and through a

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

settlement agreement which they voluntarily entered into which required that they remove hanging points in the cells mentally ill inmates.

6.      Despite this long history with inmate suicides, each of the individually names defendants in this lawsuit deliberately failed to take even modest actions to prevent inmate suicides.  Thus, by the time Erick de Anda was taken into custody and placed at the Monterey County jail, the cells intended for inmates with mental illness still contained the hanging hazards.

7.      Each of the present defendants knew of and/or had multiple contacts with decedent Erick de Anda in the days before his death.  Had the present defendants complied with the judicially ordered corrective measures and the terms of the court order and their agreement, the death of Erick De Anda would not have occurred. Defendants would have identified decedent Erick de Anda's acute mental health crisis and risk factors, placed him in a safe cell, removed all ligature material, monitored him properly and otherwise intervened to protect him as required by the special relationship that they had with him.  Instead, they ignored their previous agreements and the order of the court, placed Erick de Anda in a cell which contained a hanging point and provided him a bed sheet to hang himself with, failed to monitor him, and allowed him to commit suicide.  As a result, Erick de Anda died and his death has had a profound and unimaginable loss to his father, Enrique de Anda Garcia, a plaintiff to this action.

## JURISDICTION AND VENUE

8.      This action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Monterey, California.

10.     With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims. Plaintiffs presented governmental tort claims with Defendant COUNTY OF MONTEREY on behalf of the Estate of Erick de Anda and Enrique de Anda Garcia on March 15, 2015. Defendant COUNTY OF MONTEREY has not rejected these claims. With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**PARTIES**

11.     Decedent Erick de Anda was a 24-year-old mentally ill young man residing in the County of Monterey, California.  The claims made by Plaintiff ESTATE OF ERICK DE ANDA, are brought by Enrique de Anda Garcia, the successor in interest to the Estate of Erick de Anda.

12.     Plaintiff ENRIQUE DE ANDA GARCIA, is and was, at all times relevant hereto, the natural father of decedent Erick de Anda, and at all times relevant hereto was a resident of Monterey County, California.

13.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP (hereinafter also "CFMG") is a California corporation headquartered in Monterey, California. CFMG is a private for-profit correctional health care provider that, at all relevant times herein, services approximately 65 correctional facilities in 27 California counties.

14.     Defendant COUNTY OF MONTEREY contracts with Defendant CFMG to provide through its employees, agents and representatives, medical, mental health, and dental services for the Monterey County Jail.  In this respect, CFMG, through its

4

employees, agents and representatives, provides an important governmental function and stands in the place of the COUNTY OF MONTEREY in carrying out its duties at the Monterey County Jail.   In its capacity as the provider of these important governmental services to the inmates of the Monterey County Jail, CFMG and its employees, agents and representatives were in a special relationship with said inmates.

15.   At all relevant times mentioned herein, Defendant CFMG, and its employees, agents and representatives, were responsible for the provision of health services to decedent Erick de Anda during his detention in the Monterey County Jail. Defendant CFMG was in a special relationship with Erick de Anda.

16.   At all relevant times mentioned herein, Defendant CFMG, and its employees, agents, officers, administrators and representatives, were acting under the color of law.  Courts have treated medical groups employed to provide prison medical services as local government entities for purposes of deliberate indifference claims. *See Carrea v. California*, No. EDCV 07-1148-CAS (MAN), 2009 WL 1770130, at *8 & n.5 (C.D. Cal. June 18, 2009) (collecting cases).

17.   Defendant RAYMOND HERR, MD, is, and at all times relevant hereto, was Chief Medical Officer and President, California Forensic Medical Group.  At all times relevant hereto, he was responsible for overseeing the delivery of medical, mental health and dental care at the Monterey County Jail facilities, including standards of medical care and utilization review. Defendant RAYMOND HERR is and was responsible for promulgation of policies and procedures and allowance of the practices/customs pursuant to which the acts of CFMG alleged herein were committed. Private physicians employed to provide medical care to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto the present defendant was acting under the color of law.

18.   Defendant TAYLOR FITHIAN (hereinafter also "FITHIAN"), is, and was at all relevant times mentioned herein, the co-founder and President for Defendant CFMG. Defendant FITHIAN was previously the Medical Director and

Chief Psychiatrist for Mental Health Services for CFMG, and is now the Chief of Behavioral Health Services for CFMG. Defendant FITHIAN is also the psychiatrist at Monterey County Jail, providing psychiatric services at the Jail, and overseeing provision of mental health by other CFMG staff at the Jail. The present defendant is and was responsible for promulgation of policies and procedures and allowance of the practices/customs pursuant to which the acts of CFMG, and its employees and agents, alleged herein were committed. Private physicians employed to provide medical care to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was acting under the color of law.

19.     Defendant KIP HALLMAN, hereafter also referred to as "defendant HALLMAN", is, and at all times was, the Chief Executive Officer for CFMG and had the duty and responsibility for managing and overseeing all CFMG operations, including those at the Monterey County Jail. The present defendant is and was responsible for promulgation of policies and procedures and allowance of the practices/customs pursuant to which the acts of CFMG, and its employees and agents, alleged herein were committed. Private managers employed to provide medical care to inmates are state actors for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was acting under the color of law.

20.     Defendant CINDY WATSON, hereafter also "Defendant WATSON", is, and at all times was, the Chief Operating Officer for CFMG and had the duty and responsibility for overseeing all CFMG operations at the Monterey County Jail. The present defendant is and was responsible for promulgation of policies and procedures and allowance of the practices/customs pursuant to which the acts of CFMG, and its employees and agents, alleged herein were committed. Private managers employed to provide medical care to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was acting under the color of law.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1     21.     Defendant MARY ANN ROWE (hereinafter also "defendant ROWE"),

2    is, and was at all relevant times mentioned herein, Defendant CFMG's on-site mental

3    health provider for Monterey County Jail. Defendant ROWE is responsible for the

4    day-to-day provision and administration of mental health care at the Jail. Defendant

5    ROWE is also responsible for policies, procedures, and practices regarding provision

6    of mental health care at the Jail, and is responsible for training and supervision of

7    CFMG medical staff servicing the Jail.  In addition, on information and belief,

8    defendant ROWE released decedent Erick de Anda from suicide watch on August 29,

9    2015. Private physicians, such as the present defendant, employed to provide medical

10   care to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S.

11   42, 54-55 (1988). At all times relevant hereto, the present defendant was acting under

     the color of law.

12     22.     Defendant ELIZABETH FALCON (hereafter "defendant FALCON") is,

13   and at all relevant times hereto was, the Director of Behavioral Health Services for

14   CFMG, and her duties included the developing, implementing and monitoring of

15   policies and procedures for the provision of mental health services at the Monterey

16   County Jail. Private physicians, such as the present defendant, employed to provide

17   medical care to inmates are state actors for purposes of § 1983. *See West v. Atkins*,

18   487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was

19   acting under the color of law.

20     23.     Defendant YVONNE MAXFIELD, RN (hereafter "Defendant

21   MAXFIELD") is, and, at all times relevant to, was the Director of Operations for

22   CFMG at the Monterey County Jail.  She was responsible for overseeing CFMG's

23   operations at the Monterey County Jail. She reviewed operations and program

24   practices including staffing, hiring, training, retention and performance review. She,

25   along with her other CFMG co-defendants, worked in conjunction with jail

26   administration and the CFMG on-site health care staff to carry out the duties that

27   CFMG was contracted to carry out and to ensure compliance with CFMG's goals and

28   objectives and the County's operational plan, court orders and the settlement that

7

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

CFMG and the County were party to with respect to the operation of the Monterey County Jail.  Medical services managers, such as the present defendant, employed to provide medical care to inmates are state actors for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was acting under the color of law.

24.     JODEL JENCKS (hereafter "Defendant JENCKS") is, and, at all times relevant to, was a Director of Operations for CFMG.  She was responsible for overseeing CFMG's operations at the Monterey County Jail. She reviewed operations and program practices including staffing, hiring, training, retention and performance review. She, along with her other CFMG co-defendants, worked in conjunction with jail administration and the CFMG on-site health care staff to carry out the duties that CFMG was contracted to carry out and to ensure compliance with CFMG's goals and objectives and the County's operational plan, court orders and the settlement that CFMG and the County were party to with respect to the operation of the Monterey County Jail.  Medical services managers, such as the present defendant, employed to provide medical care to inmates are state actors for purposes of § 1983. See West v. Atkins, 487 U.S. 42, 54-55 (1988).  At all times relevant hereto, the present defendant was acting under the color of law.

25.     Defendant DOES 1 through 5, are, and were, at all relevant times mentioned herein, Defendant CFMG's employees, agents and representatives involved in the carrying out of services to inmates at the Monterey County Jail. Defendant DOES 1 through 6 are, and/or were, also responsible for policies, procedures, and practices regarding provision of health care at the Jail, and is responsible for training and supervision of CFMG medical staff servicing the Jail. Individuals employed to provide medical services to inmates are state actors for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54-55 (1988)

26.     Defendant COUNTY OF MONTEREY (hereinafter also "COUNTY") is and was, at all relevant times hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

be sued.  Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies.

27.    Defendant COUNTY owns, operates, manages, directs and controls Defendant MONTEREY COUNTY SHERIFF'S OFFICE (hereinafter also "MCSO"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including MCSO employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through MCSO, is and was responsible for ensuring the safety of all persons incarcerated in the Jail and providing them appropriate medical and mental health treatment.

28.    Defendant STEVE BERNAL (hereinafter also "BERNAL" and "SHERIFF BERNAL") is and, since December 31, 2014, has been the Sheriff-Coroner of Defendant COUNTY OF MONTEREY, the highest position in MCSO. As Sheriff, Defendant BERNAL is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all MCSO employees and/or agents. Defendant SHERIFF BERNAL is and was charged by law with oversight and administration of the Monterey County Jail (hereinafter also "Jail"), including ensuring the safety of the inmates housed therein. Defendant SHERIFF BERNAL also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the MCSO alleged herein were committed. Defendant SHERIFF BERNAL is being sued in his individual and official capacities.

29.    Defendant JOHN MIHU (hereinafter also "MIHU") is and was at all times relevant herein a Commander in MCSO, one of the highest-level supervisory positions. In September 2015, Defendant MIHU was the Jails Operations Commander, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the Jail, including ensuring the safety of the inmates

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

housed therein. As Jails Operations Commander, Defendant MIHU was responsible for supervision of MCSO employees and/or agents at the Jail, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the MCSO alleged herein were committed. Defendant MIHU also directly supervised Defendant DOES 6 through 10. Defendant MIHU is being sued in his individual and official capacities.

30.    Defendant JAMES BASS (hereinafter also "BASS") is and was at all times relevant herein a Commander in MCSO, one of the highest-level supervisory positions. In September of 2015, Defendant BASS's responsibilities at the Jail included medical liaison, overseeing the classification unit, and compliance. As Commander, Defendant BASS was responsible for assisting the Sheriff-Coroner with oversight and administration of the Jail, including ensuring the safety of the inmates housed therein. In September of 2015, Defendant BASS was specifically responsible for working with CFMG, and working on issues related to the class action lawsuit against the Jail for, *inter alia,* failure to provide adequate medical and mental health treatment to inmates. Defendant BASS was and is responsible for supervision of MCSO employees and/or agents at the Jail, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the MCSO alleged herein were committed. Defendant BASS also directly supervised Defendant DOES 6 through 10. Defendant BASS is being sued in his individual and official capacities.

31.    Defendants DOES 6 through 10 are, and were at all relevant times mentioned herein, deputies, sergeants or civilian employees in MCSO. As Sergeants, Defendant DOES 6 through 10 are supervisors at the Monterey County Jail, are responsible for ensuring the safety of the inmates housed therein, and supervise all of the deputies that are on duty during their shifts. Defendant DOES 6 through 10 were, among other roles, shift supervisors on September 16, 2015, when Erick de Anda died. Defendants DOES 6 through 10 are being sued in their individual capacities.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

32.     Defendants DAVID COOPER (hereinafter also "COOPER") and DAVID RAMON (hereinafter also "RAMON") are, and were at all relevant times mentioned herein, a MCSO sergeant and deputy, respectively. Defendants COOPER and RAMON were assigned to work at Monterey County Jail, and were responsible for carrying out MCSO policies and procedures and for ensuring the safety of inmates at the Jail. Defendants COOPER and RAMON were assigned to work floor deputies for the isolation area of the men's section of the Jail on the day of September 16, 2015, when Erick de Anda died. Defendants COOPER and RAMON are being sued in their individual capacities.

33.     At all relevant times, each of the Defendants engaged in the acts or omissions alleged herein under color of state law.

34.     At all relevant times, each of the Defendants DOES 1 through 10 was acting within his or her capacity as an employee, agent, representative and/or servant of Defendants COUNTY OF MONTEREY and CFMG and is sued in their individual capacities.

35.     At times in the present complaint, defendants SHERIFF STEVE BERNAL, COMMANDER JOHN MIHU, COMMANDER JAMES BASS, SERGEANT DAVID COOPER, DEPUTY DAVID RAMON, and DOES 6 through 10 will be referred to collectively as "County defendants."

36.     At times in the present complaint, defendants RAYMOND HERR, TAYLOR FITHIAN, KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY WATSON, YVONNE MAXFIELD, JODEL JENCKS, and DOE 1 through 5 will be referred to collectively as "CFMG defendants."

37.     The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

38.     Defendants DOES 6 through 10 are and were also supervisorial employees for Defendant COUNTY OF MONTEREY who were acting under color of law within the course and scope of their duties as deputies for Defendant COUNTY OF MONTEREY. Defendants DOES 6 through 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY OF MONTEREY.

39.     Defendants DOES 6 through 10 were also duly appointed deputies, sergeants, lieutenants, detectives, or other supervisors, officials, executives and/or policymakers of MCSO, a department and subdivision of Defendant COUNTY OF MONTEREY, and at all times mentioned herein said Defendants were acting in the course and scope of their employment with Defendant COUNTY OF MONTEREY, which is liable under the doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

40.     Defendants DOES 6 through 10 are managerial, supervisorial, and policymaking employees of Defendant COUNTY OF MONTEREY, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for Defendant COUNTY OF MONTEREY. Defendants DOES 6 through 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY OF MONTEREY.

41.     Each of the Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control.  Whenever and wherever

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained.  Each of the Defendants is the agent of the other.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I. September 16, 2015 – Eric de Anda Commits Suicide in an Isolation Cell.

42.    Erick de Anda suffered from severe schizophrenia since childhood.

43.    On August 25, 2015, at approximately 6:35 p.m., MCSO deputies arrested Erick de Anda for the death of his mother during a schizophrenic episode. At the time of his arrest, Erick de Anda was 24 years old and suffered from a lifetime of severe schizophrenia, including episodes of severe psychosis and suicidal ideations.

44.    On August 25, 2015, at approximately 6:55 p.m., decedent Erick de Anda was transported to the Monterey County Jail.

45.    On August 26, 2015, at approximately 3:53 a.m., Erick de Anda was moved from booking to a single cell.

46.    On August 27, 2015, at approximately 7:55 p.m., Erick de Anda was moved to a "safety cell."  Safety cells at the Monterey County Jail are small cells with padded rubber walls. Safety cells do not contain furniture, mattress, or blanket, and a grate in the floor is used in lieu of a toilet.

47.    On August 28, 2015, at approximately 8:40 a.m., Defendant ROWE, under the supervision of defendant FITHIAN and other defendants, medically "cleared" decedent Erick de Anda.

48.    On August 29, 2015, Defendant ROWE gave orders to discontinue suicide watch and to transfer decedent Erick de Anda from a safety cell to an isolation cell. Specifically, decedent Erick de Anda was placed in Isolation Cell

13

Number 2.  The CFMG defendants knew that there were hanging points, i.e., appurtenances within the cell such as smoke detectors, pipes, bars and other fixtures from which an inmate could hang himself.

49.     The isolation cell logs associated with decedent Erick de Anda indicated that he was a "hi-risk suicide." Despite this, he was moved to an isolation cell where he was no longer monitored directly.

50.     By this time the County defendants and the CFMG defendants knew that Erick de Anda suffered from serious mental illness.  They had learned of, and confirmed, his condition through media reports related to the killing of his mother, through interviews with him, through conversations during court proceedings and with his attorneys.   Each of the defendants knew that Erick de Anda had a father and that his father was visiting him regularly and/or was attending the proceedings related to Erick de Anda's criminal case.

51.     On September 16, 2015, Defendants COOPER and RAMON, were working as floor deputies in the isolation area of the Monterey County Jail.

52.     On September 16, 2015, at approximately 3:50 p.m., Defendant COOPER and RAMON found Erick de Anda's body suspended from a bed sheet that was tied to the cover of a smoke detector.

53.     Eventually, Erick de Anda's suspended body was taken down from the hanging bedsheet. Erick de Anda was pronounced dead at Natividad Medical Center on September 16, 2015 at 3:55 p.m.

**II.   Defendants' Knowledge of Inadequacy of Suicide Prevention Procedures and Hazards Existing in Isolation Cells of the Monterey County Jail.**

54.     By the time that Erick de Anda was moved to the isolation cell, the County defendants and the CFMG defendants, and each of them, understood the isolation cell where decedent Erick de Anda was housed on August 29, 2015 and until his death on September 16, 2015 contained suicide hazards and was unreasonably dangerous for housing inmates with identified mental health concerns.

55.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

56.     Pursuant to its contract and related agreements with MONTEREY COUNTY, CFMG took over and was soley responsible for the provision of medical and mental health services at the Monterey County jail.  Essentially, MONTEREY COUNTY turned over this important function to CFMG.  Through their various agreements that were in place by the time Erick de Anda was taken into custody at the Monterey County jail, the CFMG defendants were to provide the following to MONTEREY COUNTY at the Monterey County jail:

a.  Staffing for the jail's medical and mental health units;

b.  Administrative structure, medical direction and operational oversight for the medical and mental health units;

c.  Oversight of the day-to-day operations of the health services programs at the jail;

d.  Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

e.  Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

f.  Development, implementation and revision policies, procedures and practices for the training of custodial staff at the jail;

g.  Monitoring, with the administrative jail staff, of the operation of the medical units, including the operation of the isolation units for mentally ill inmates;

h.  Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

i.    Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

57.    County Defendants and CFMG Defendants had been on notice for years that their provision of medical and mental health treatment to inmates at the Monterey County Jail was inadequate and resulted in needless harm and death.

58.    Decedent Erick de Anda was housed in Isolation Cell Number 2 of either the A-pod or B-pod units which consist of single cells that predominantly, in accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, are used to house individuals with mental health needs.  Other units, including C-pod, are used as overflow housing for individuals with mental health needs.  In accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, A-pod, B-pod, and C-pod are "lockdown" units, meaning that individuals housed there generally are locked in their cells for approximately twenty-three hours a day and permitted to use the dayroom, take a shower, or do other activities outside the cell for approximately one hour a day.  In accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, individuals housed in lockdown units are permitted to come out for visits, court or medical appointments, and certain jail events.  In accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, individuals with mental health needs are housed in A-pod and B-pod because they are single cells, and thus the risks of assaults between inmates is lessened.  In accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, an MCSO deputy does hourly welfare and safety checks of the pod cells.   Those hourly checks consist of walking through both tiers of each pod and can be completed within one or two minutes. In accordance with Defendant COUNTY and Defendant CFMG's policies, procedures, and practices, no additional safety checks are performed when an individual is placed in a lockdown cell upon release from suicide watch.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

59.     The lockdown cells, including Isolation Cell Number 2 where decedent Erick de Anda was housed from August 29, 2015 to the time of his death on September 16, 2015, contain beds with sheets.  Including records of Defendant COUNTY OF MONTEREY and the sworn testimony of Defendant BASS, at all relevant times hereto, the lockdown cells had attachment points that could be used for suicide by hanging, including air vents and smoke detectors located on the walls and ceilings.

60.     As established in *Estate of Joshua Claypole, et al., v. County of Monterey, et al.,* (USDC Case No. 5:14-cv-02730-BLF), the lockdown cells, including the one that Erick de Anda died in, contained various different obvious choking points and suicide hazards; that is, appurtenances from which inmates could hang themselves.  These included smoke detectors, pipes, bars and other fixtures within the cell.

61.     Prior to the death of Erick de Anda, other persons in the custody of the County defendants and supervised and cared for by the CFMG defendants had committed suicide by similar, if not identical, means during their incarcerations at Monterey County Jail:

   a.     In 2010 and 2011, there were at least two suicides by hanging in lockdown cells.

   b.     In 2011 and 2012, at least five other individuals attempted to hang themselves with bedsheets, at least three of which were attached to vents or grates in their cells.

   c.     As established in *Estate of Joshua Claypole, et al., v. County of Monterey, et al*., case number 5:14-cv-02730-BLF (N.D. Cal.), Docket Number 55, in 2013, decedent Joshua Claypole hung himself using a bed sheet during the time that he was housed in an isolation cell at Monterey County Jail.

   d.     As established in *Estate of Sandra Vela, et al., v. County of Monterey, et al*., case number 5:16-cv-02375-BLF (N.D. Cal.), specifically Docket

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Number 54, decedent Sandra Vela hung herself using a bed sheet during the time that she was housed in an isolation cell at Monterey County Jail.

62.     A December 30, 2011 Jail Needs Assessment commissioned by Defendant COUNTY OF MONTEREY found a number of problems with respect to protecting inmates from harm at the Jail, including:

a.     "suicide hazard elimination is not as stringent as it should be to prevent self-harm and the attendant liability;"

b.     "glaring example of the physical plan limitations in the existing jail is the design of the control or 'guard' station, and the ability of staff to directly supervise inmates. At best there is intermittent observation of the inmates;" and

c.     the operation of the Jail as an "indirect supervision jail" makes mental health issues "considerably more difficult to recognize, manage, and treat."

63.     The 2011 Jail Needs Assessment also found that Defendants' policies and procedures for screening, supervising, and treating inmates at risk for suicide were inadequate, and that chronic understaffing of the jail hindered the ability of Defendants to provide adequate medical care and maintain inmate safety and security.

64.     On May 23, 2013, the federal class action *Jesse Hernandez, et al., v. County of Monterey, et al.*, case number 5:13-cv-2354-PSG (N.D. Cal.), was filed against Defendants COUNTY OF MONTEREY and CFMG alleging that these Defendants were deliberately indifferent to the medical and mental health needs of inmates housed at the Monterey County Jail, resulting in grievous and unnecessary suffering, harm, and death.

65.     In 2013, experts were jointly retained by Defendants COUNTY OF MONTEREY, CFMG and the Plaintiffs in the class action lawsuit to evaluate the Monterey County Jail.  These experts identified a variety of deficiencies in the provision of medical and mental health care at the Jail and the presence of hazards including the conditions in the lockdown units that put inmates at unacceptable risk

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

of suicide and self-harm.   Each of the CFMG defendants participated in the hiring of said experts and, by the end of 2013, each of the CFMG were presented with the findings of such experts.  Through these findings, each of the CFMG defendants again were informed of the dangerousness of the isolation cells and the great danger that existed there to inmates who suffered from mental illness.

66.     Despite these known suicide hazards and deficiencies in monitoring inmates in the lockdown units, at the time decedent Erick de Anda was in the Monterey County Jail, Defendant COUNTY OF MONTEREY had a policy, procedure, practice and/or custom of housing inmates with identified mental health concerns specifically in isolation in these lockdown units.  The CFMG defendants were also aware of these policies, procedures, practices and customs and each of them followed it and, through that, ratified it.

67.     In 2013, the matter of *Jesse Hernandez, et al., v. County of Monterey, et al.*, case number 5:13-cv-2354-PSG (N.D. Cal.) was filed and served upon the present defendants.   This again put them on notice of the great risk of suicide that existed within the Monterey County jail, including in the cell that Erick de Anda died in.

68.     Though an agreement with the plaintiffs in the *Hernandez* matter, the present defendants hired experts which examined the dangers that were present in the Monterey County jail and through these experts learned again of the great risk of death to mentally ill inmates in the isolation cells within the jail.

69.     On April 14, 2015, a federal court issued an order granting a motion for a preliminary injunction in the class action lawsuit that had been filed in 2013 against Defendants COUNTY OF MONTEREY and CFMG and other of the defendants named herein, *Jesse Hernandez, et al., v. County of Monterey, et al.*, case number 5:13-cv-2354-PSG (N.D. Cal.).

70.     In that order, Defendants COUNTY OF MONTEREY, the County defendants, CFMG and the CFMG defendants were ordered to "remove all hanging points and other hazards in the jail's administrative segregation units that pose a risk of being used by inmates to harm themselves or attempt suicide."  The court's order,

a copy of which is attached hereto, put the present defendants on notice of the immediate danger that existed within the jail to inmates with mental illness.   *See, Exhibit 1, Order Granting Motion for Preliminary Injunction* (hereafter "Order").

71.   In the Order, found constitutional and statutory violations, and the court noted as follows:

a.   "The experts identified a variety of deficiencies and hazards, including: …administrative segregation unit conditions that put inmates at unacceptable risk of suicide and self-harm;" *Order at 2:3.*

b.   "Plaintiffs provide significant evidence that Defendants' policies and practices constitute deliberate indifference to Plaintiffs' serious medical needs, particularly for the mentally ill."  *Order at 21:5*

c.   "As a matter of policy and practice, Defendants house the inmates with the most serious mental illness and who are most clinically unstable in segregation units *because* of their mental illness."  *Order at 21:10.*

d.   "Despite four suicides in administrative segregation, Defendants continue to place clinically unstable mentally ill patients in segregation and fail to eliminate potential suicide hazards. And Defendants fail to engage in practices – conducing pre-segregation screening, providing adequate structured and unstructured out-of-cell time, utilizing a suicide risk assessment tool – known to reduce the risks created by administrative segregation."  *Order at 21:10-22:3.*

e.   "Each [of the four suicides that had occurred since 2010] occurred in administrative segregation cells…. Each inmate committed suicide by attaching sheets or other fabric in their cell to easily accessible hanging points. By the time that custody staff conducting health and welfare checks discovered that the inmates were attempting suicide by hanging, two of the inmates had already died and two others inflicted injuries so severe that they never regained consciousness." *Order at 22:14-23:1.*

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

72.     Specifically, with regard to Defendant COUNTY OF MONTEREY's policies and procedures for inmates in administrative segregation (i.e., lockdown) housing, the court found that Defendant COUNTY OF MONTEREY's policy regarding health and safety checks in administrative segregation units did not meet correctional standards to prevent suicides and placed all inmates, especially those with serious mental illness, at risk of serious harm.

73.     CFMG and the COUNTY were ordered to, among other things, prepare a plan to remedy the constitutional and statutory violations, including the removal of all hanging points and other hazards in the jail's administrative segregation units that pose a risk of being used by inmates to harm themselves or attempt suicide.  By the time that Erick de Anda, CFMG, the CFMG defendants, the COUNTY and the County defendants failed to carry out this element of the plan as well as those elements of the plan which related to the monitoring of inmates suffering from mental illness such as Erick de Anda.

74.     The *Hernandez* Court's April 2015 findings regarding the failures of County Defendants to take actions to eliminate the known suicide hazards in their lockdown units directly reflected the repeated decision by the County defendants and the CFMG defendants not to take these actions or direct that they be taken. The *Hernandez* Court's findings that the County defendants and the CFMG defendants failed to implement practices to reduce the risk to inmates in administrative segregation also directly reflected the repeated decision by said defendants not to implement such practices. This directly resulted in harm to decedent Erick de Anda.

**II.    Defendants' knowledge that custody officers regularly failed to conduct required hourly safety checks and failure to take adequate measures to address and ameliorate this failure.**

75.     Welfare and safety checks by custody staff, when done correctly, are an important part of protecting inmates in the Monterey County Jail from harm, including preventing suicide. Both the County defendants and the CFMG defendants knew that health and welfare checks conducted in lockdown units were part of

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

suicide prevention programs and that such checks were necessary for suicide prevention.

76.     Prior to the death of decedent Erick de Anda, the County defendants and the CFMG defendants were aware that there was a problem with custody officers failing to actually perform required welfare and safety checks in the housing units at the Jail.

77.     The County defendants and the CFMG defendants became aware of systemic problems with welfare and safety checks as early as 2011, including regular failure by deputies to conduct checks and inaccurate logging of checks.

78.     Despite said defendants' knowledge that deputies were failing to conduct welfare and safety checks in accordance with the COUNTY OF MONTEREY's policies, and that deputies were falsifying safety check logs, said defendants did not take adequate measures to correct these failures, in effect ratifying the behavior of the deputies and the supervisors of the Monterey County Jail and the CFMG jail staff who turned a blind eye to this practice.

79.     In 2014, Defendant COUNTY OF MONTEREY specifically assigned a sergeant at the Monterey County Jail to do a daily review of checks every day, purportedly to ensure that custody officers would perform them. However, during this monitoring, the sergeant reported ongoing, frequent, and repeated problems with custody officers actually performing these checks. The sergeant notified MCSO supervisors of these ongoing problems, including Defendants MIHU and BASS. However, Defendants MIHU and BASS failed to take any measures to correct these failures.  The County defendants and the CFMG defendants knew of these persistent problems with welfare and safety checks, but failed to take any corrective action, kept Defendants MIHU and BASS in place as supervisors of the Jail without any further training or corrective action, thus permitting and condoning the ongoing failure to conduct adequate welfare checks.

80.     The County defendants and the CFMG defendants knew of persistent and ongoing problems with welfare and safety checks, and understood these to be an

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

important component of the Monterey County Jail's suicide prevention plan, but they did not direct that any command staff or officers be disciplined for failing to conduct safety checks in accordance with policy or for falsifying safety check logs. Said defendants helped establish a practice at the Monterey County Jail of failing to conduct welfare and safety checks.

81.     2015 Grand Jury Report on the Monterey County Jail found that welfare and safety checks were still not being conducted correctly. The Report concluded, "Another problem the MCCGJ discovered was that some logs are incorrectly or falsely filled out, with checks being claimed when they were not actually done." The Report stated that audits of the Jail in 2015 reviewed by the Grand Jury showed that safety checks were "frequently missed or skipped, or not adequately documented." As an example, the Report noted that in January 2015, full compliance with the required checks "was achieved on only eight days."

82.     Despite all of this information and evidence that welfare and safety checks were not being done as required, and that failure to conduct these checks created substantial risk of harm to inmates, the County defendants and the CFMG defendants failed to take adequate steps to address and correct the problem.

83.     The County defendants and the CFMG defendants failed to provide decedent Erick de Anda necessary medical and mental health care, increasing his mental health symptoms; specifically housed him in isolation in a cell with known suicide hazards despite obvious symptoms of suicidality; and failed to ensure that basic procedures required of correctional facilities to protect inmates from harm were followed.

84.     These actions and omissions by Defendants directly placed decedent Erick de Anda at substantial risk of the grievous and tragic harm that ultimately occurred.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

**Deliberate Indifference to Serious Medical and Mental Health Needs,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Estate of Erick de Anda, As Against County Defendants, CFMG, CFMG**

**Defendants and DOES 1 through 10**

85.     Plaintiff Estate of Erick de Anda, by and through successor in interest Enrique de Anda, realleges and incorporates the foregoing paragraphs as if set forth herein.

86.     County and CFMG Defendants had inadequate policies, procedures, and practices to ensure provision of minimally adequate medical and mental health treatment to inmates housed at the Jail.

87.     County Defendants also failed to adequately supervise the provision of medical and mental health services at the Jail, violating their constitutional obligation to ensure that inmates entrusted to their care receive necessary treatment.

88.     County Defendants also failed to properly train and supervise custody staff regarding policies, procedures, and practices that are necessary for the provision of adequate medical and mental health care, including conducting welfare and safety checks and responding to medical emergencies.

89.     CFMG Defendants failed to promulgate and implement policies, procedures, and practices to ensure that medical staff, including mental health staff, met the standard of care when providing treatment to inmates.

90.     County and CFMG Defendants were on notice for years prior to the death of Erick de Anda that their provision of medical and mental health care was woefully inadequate and fell far short of the minimum elements of a constitutional health care system. County and CFMG Defendants were on notice that their policies, procedures, and practices resulted in failure to provide necessary medical and mental

health care to the inmates at the Jail, and that this failure may result in otherwise preventable death.

91.     County and CFMG Defendants' failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

92.     Decedent Erick de Anda's mental health needs were known to County and CFMG Defendants throughout the brief period of his incarceration at the Monterey County Jail. Despite this knowledge, and decedent Erick de Anda's obvious signs of serious psychological illness and emotional distress, Defendants failed to provide necessary mental health evaluation and treatment to Erick de Anda while he was held at the Jail.

93.     The County defendants and the CFMG defendants placed Erick de Anda, or allowed Erick de Anda to be placed in a cell that they knew had hanging points. Said defendants knew that there was a substantial risk that Erick de Anda would hang himself, they knew that if he was allowed to be unsupervised in that cell with material such as a sheet that could be used as a ligature, that Erick de Anda would hang himself.

94.     Defendant ROWE discharged decedent Erick de Anda from suicide watch without performing an assessment of his suicide risk that met the standard of care.

95.     County and CFMG Defendants' actions and/or omissions as alleged herein, including but not limited to their failure to provide Erick de Anda with appropriate psychiatric care and to identify suicide risk, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to identify suicide risk and provide psychiatric treatment, constituted deliberate indifference to Erick de Anda's serious medical needs, health, and safety.

96.     As a direct and proximate result of Defendants' conduct, the civil right of Erick de Anda, as protected by the Fourteenth Amendment of the U.S. Constitution

25

1   were violated.  Further, decedent Erick de Anda experienced physical pain, severe

2   emotional distress, and mental anguish, as well as loss of his life and other damages

3   alleged herein.

4        97.    The aforementioned acts of RAYMOND HERR, TAYLOR FITHIAN,

5   KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY

6   WATSON, YVONNE MAXFIELD, JODEL JENCKS, CALIFORNIA FORENSIC

7   MEDICAL GROUP, INC., STEVE BERNAL, JOHN MIHU, JAMES BASS,

8   DAVID COOPER, and DAVID RAMON were conducted with conscious disregard

9   for the health, safety and welfare of Erick de Anda, and were therefore malicious,

10   wanton, and oppressive. As a result, said defendants' actions justify an award of

11   exemplary and punitive damages to punish the wrongful conduct alleged herein and

   to deter such conduct in the future.

12   **<u>SECOND CLAIM FOR RELIEF</u>**

13   **Failure to Protect from Harm,**

14   **Violation of the Fourteenth Amendment to the United States Constitution**

15   **(Survival Action – 42 U.S.C. § 1983)**

16   **By Plaintiff Estate of Erick de Anda, As Against County Defendants, CFMG,**

17   **CFMG Defendants and DOES 1 through 10**

18        98.    Plaintiff Estate of Erick de Anda, by and through successor in interest

19   Enrique de Anda, realleges and incorporates the foregoing paragraphs as if set forth

20   herein.

21        99.    County defendants, CFMG and CFMG Defendants were on notice that

22   their deficient policies, procedures, and practices alleged herein created substantial

23   risk of serious harm, including self-inflicted harm, to an inmate in decedent Erick de

24   Anda's position.

25        100.   Each Defendant could have taken action to prevent unnecessary harm to

26   decedent Erick de Anda but refused or failed to do so.

27        101.   By policy, procedure, and practice, County and CFMG Defendants

28   specifically housed decedent Erick de Anda in isolation in a cell in the lockdown unit

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

at the Monterey County Jail that contained known suicide hazards. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risk of harm, including self-inflicted harm, that was attendant to housing decedent Erick de Anda in this setting.

102.   County Defendants including SHERIFF BERNAL, MIHU, BASS and DOES 6 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks in the lockdown units and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

103.   Defendant BERNAL failed to take corrective action, discipline, or remove the command staff at the Monterey County Jail who directed the deputies to falsify safety check logs and violate the County's safety check policies. Defendant BERNAL ratified their actions, and the practices used under his watch.

104.   County and CFMG Defendants were on notice that their policies, procedures, and practices for monitoring inmates in the lockdown units at the Monterey County Jail were inadequate and gave rise to a substantial risk of serious harm.

105.   County and CFMG Defendants failed to properly train and supervise County staff and CFMG staff regarding policies, procedures, and practices necessary for the protection of inmates from harm, including self-inflicted harm.

106.   County and CFMG Defendants' failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

107.   Defendant ROWE's discharge of decedent Erick de Anda from suicide watch in a safety cell directly back to a cell in the lockdown unit with known suicide hazards, without adequate suicide prevention precautions, directly placed decedent Erick de Anda at a substantial risk of serious harm, including suicide.

108.   Defendants COOPER and RAMON's failure to conduct the required safety check of decedent Erick de Anda's housing unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Erick de Anda.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

109.   Defendants SHERIFF BERNAL, MIHU, BASS and DOES 6 through 10 ratified Defendants COOPER and RAMON'S failure to conduct safety checks and falsification of logs.

110.   As a direct and proximate result of Defendants' conduct, decedent Erick de Anda experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

The aforementioned acts of RAYMOND HERR, TAYLOR FITHIAN, KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY WATSON, YVONNE MAXFIELD, JODEL JENCKS, CALIFORNIA FORENSIC MEDICAL GROUP, INC., STEVE BERNAL, JOHN MIHU, JAMES BASS, DAVID COOPER, and DAVID RAMON were conducted with conscious disregard for the health, safety and welfare of Erick de Anda, and were therefore malicious, wanton, and oppressive. As a result, said defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### THRID CLAIM FOR RELIEF

**Municipal Liability (*Monell* Liability) for Unconstitutional Policies, Procedures, Practices and Customs.**

**(42.S.C. § 1983)**

**By Plaintiff Estate of Erick de Anda, As to Defendants Monterey County, Monterey County Sheriff's Office and CFMG.**

111.   Plaintiff Estate of Erick de Anda, by and through successor in interest Enrique de Anda, realleges and incorporates the foregoing paragraphs as if set forth herein.

112.   On and before September 6, 2015, and prior to the death of Erick de Anda, defendants Monterey County, Monterey County Sheriff's Office and CFMG were aware that the County defendants and the CFMG defendants had engaged in a custom and practice of callous and reckless disregard for the health and safety of

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    mentally ill inmates in the Monterey County jail as summarized in the paragraphs

2    above.

3        113.   Defendants Monterey County, Monterey County Sheriff's Office and

4    CFMG, acting with deliberate indifference to the rights and liberties of those persons

5    who would become inmates in the Monterey County jail, and of Erick de Anda, and

6    of persons in Erick de Anda's class, situation and comparable position in particular,

7    knowingly maintained, ratified, enforced and applied the policies, porcedures,

8    customs and practices described herein above.

9        114.   By reason of the aforementioned customs and practices, Plaintiffs were

10   severely injured and subjected to pain and suffering as alleged above in the First and

11   Second Claim for Relief.

12       115.   Defendants Monterey County, Monterey County Sheriff's Office and

13   CFMG, with various other officials, whether named or unnamed, had either actual or

14   constructive knowledge of the deficient policies, practices and customs alleged in the

15   paragraphs above. Despite having knowledge as stated above these Defendants

16   condoned, tolerated and through actions and inactions thereby ratified such customs

17   and practices.  Said Defendants also acted with deliberate indifference to the

18   foreseeable effects and consequences of these policies with respect to the

19   constitutional rights of Erick de Anda and other individuals similarly situated.

20       116.   The policies, practices, and customs implemented, ratified and condoned

21   were affirmatively linked to and were a significantly influential force behind the

22   injuries to Erick de Anda.

23       117.   By reason of the aforementioned unconstitutional policies, procedures,

24   customs and practices, Erick de Anda lost his life.

25       118.   The conduct of CFMG in implementing, ratifying and condoning said

26   policies, procedures, practices, and customs was malicious and done with done with a

27   deliberate disregard for the health, safety and welfare of Erick de Anda.  Further, the

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

conduct of CFMG in implementing, ratifying and condoning said policies, procedures, practices, and customs was done for monetary gain.   As such, punitive and exemplary damages should be awarded against CFMG in an amount sufficient to meaningfully punish and deter it from such conduct in the future.

### FOURTH CLAIM FOR RELIEF

**Deprivation of Substantive Due Process Rights,**

**Loss of Parent/Child Relationship,**

**Violation of First and Fourteenth Amendments to the United States Constitution**

**(42 U.S.C. § 1983)**

**(Against ALL Defendants)**

119.   Plaintiff Enrique de Anda realleges and incorporates the foregoing paragraphs as if set forth herein.

120.   The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to decedent Erick de Anda's serious medical needs, health, and safety, violating decedent Erick de Anda's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Erick de Anda deprived Plaintiff Enrique de Anda Garcia of his liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments of the Constitution.

121.   As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

122.   The aforementioned acts of individual Defendants and CFMG were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

123.   The aforementioned acts of RAYMOND HERR, TAYLOR FITHIAN, KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

WATSON, YVONNE MAXFIELD, JODEL JENCKS, CALIFORNIA FORENSIC MEDICAL GROUP, INC., STEVE BERNAL, JOHN MIHU, JAMES BASS, DAVID COOPER, and DAVID RAMON were conducted with conscious disregard for the health, safety and welfare of Erick de Anda, and were therefore malicious, wanton, and oppressive. As a result, said defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**FIFTH CLAIM FOR RELIEF**

**Negligent Supervision, Training, Hiring, and Retention**

**(Survival Action – California State Law)**

**Against Defendants COUNTY OF MONTEREY, MONTEREY COUNTY SHERIFF'S OFFIC, STEVE BERNAL, JOHN MIHU, JAMES BASS, and DOES 6 through 10.**

124.   Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

125.   Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

126.   Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

127.   As a direct and proximate result of Defendants' failure, Plaintiffs suffered injuries and damages as alleged herein.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## SIXTH CLAIM FOR RELIEF

### Negligent Supervision, Training, Hiring, and Retention

### (Survival Action – California State Law)

### Against Defendants CFMG, CFMG defendants, and DOES 1 through 5.

128.   Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein as well as the contents of exhibit 1 hereto.

129.   Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

130.   Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

131.   As a direct and proximate result of Defendants' failure, Plaintiffs suffered injuries and damages as alleged herein.

## SEVENTH CLAIM FOR RELIEF

### Wrongful Death

### (California Code Civ. Proc. § 377.60)

### As Against All Defendants and DOES 1 through 10

132.   Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

133.   Erick de Anda's death was a direct and proximate result of the aforementioned intentional, wrongful and/or negligent acts and/or omissions of Defendants. Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiffs' injuries and damages, as alleged herein.

134.   As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs incurred expenses for funeral and burial expenses in an amount to be proved.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

135.   As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs suffered the loss of the services, society, care, and protection of the decedent, as well as the loss of the present value of his future services to his father. Plaintiffs are further entitled to recover prejudgment interest.

136.   Plaintiff ESTATE OF ERICK DE ANDA is entitled to recover punitive damages against individual Defendants who, with conscious disregard of decedent Erick de Anda's rights, failed to provide him with health care services meeting the professional standard of practice, and/or failed to adhere to legal and professional standards of correctional supervision and administration.

137.   The aforementioned acts of RAYMOND HERR, TAYLOR FITHIAN, KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY WATSON, YVONNE MAXFIELD, JODEL JENCKS, CALIFORNIA FORENSIC MEDICAL GROUP, INC., STEVE BERNAL, JOHN MIHU, JAMES BASS, DAVID COOPER, and DAVID RAMON were conducted with conscious disregard for the health, safety and welfare of Erick de Anda, and were therefore malicious, wanton, and oppressive. As a result, said defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## EIGTH CLAIM FOR RELIEF

### State Civil Rights Violations

### (Survival Action - California Civil Code § 52.1)

### As Against All Defendants and DOES 1 through 10

138.   Plaintiff Erick de Anda realleges and incorporates the foregoing paragraphs as if set forth herein.

139.   Plaintiff is informed and believes and thereon allege that while decedent Erick De Anda was under the sole exclusive care of Defendants, as described herein, and in Defendants' custody, he was suffering from a medical and mental health

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  condition which entitled him to the full and equal accommodations, advantages,
2  facilities, privileges, or services for his condition.

3       140.   Defendants acting within the scope and course of their employment
4  and/or their contractual agreements with Defendant COUNTY OF MONTEREY, had
5  a duty to provide decedent Erick de Anda medical and mental health accommodation,
6  advantages, facilities, privileges, or services for his condition, and violated said
7  statutory mandates herein. The conduct of County and CFMG Defendants, as
8  described herein, acting in the course and scope of their employment and/or
9  contractual agreements for County and CFMG Defendants, violated California Civil
10 Code Section 52.1, they interfered with Plaintiffs' decedent's exercise and enjoyment
11 of his civil rights, Erick de Anda died, and Plaintiffs have suffered damages as set
12 forth herein.

13      141.   As a direct and proximate result of Defendants' violation of Civil Code
14 §52.1, decedent suffered violation of his constitutional rights, and suffered damages
15 as set forth herein.

16      142.   Because this conduct occurred in the course and scope of their
17 employment, Defendants COUNTY OF MONTEREY and CFMG is therefore liable
18 to Plaintiffs pursuant to *respondeat superior*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

    1. For compensatory, general and special damages against each Defendant,
       jointly and severally, in an amount to be proven at trial;

    2. For damages related to loss of familial relation as to Plaintiff Enrique de
       Anda Garcia;

    3. Funeral and burial expenses, and incidental expenses not yet fully
       ascertained;

4. General damages, including damages for physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering, the loss of the services, society, care and protection of the decedent, as well as the loss of financial support and contributions, loss of the present value of future services and contributions, and loss of economic security;

5. Prejudgment interest;

6. For punitive and exemplary damages against RAYMOND HERR, TAYLOR FITHIAN, KIP HALLMAN, MARIANNE ROWE, ELIZABETH FALCON, CINDY WATSON, YVONNE MAXFIELD, JODEL JENCKS, CALIFORNIA FORENSIC MEDICAL GROUP, INC., STEVE BERNAL, JOHN MIHU, JAMES BASS, DAVID COOPER, and DAVID RAMON, in an amount sufficient and appropriate to punish each said defendant and deter others from engaging in similar misconduct;

7. For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

8. For violation of California Civil Code §52 and 52.1, statutory damages, and reasonable attorney's fees;

9. For violation of California Civil Code § 51.7 pursuant to California Civil Code § 52(b), punitive damages against Defendant peace officers;

10. For restitution as the court deems just and proper;

////
////
////
////
////
////

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1
2

11. For such other relief, including injunctive and/or declaratory relief, as the
Court may deem proper.

3
4

Dated: September 12, 2017                    CASILLAS & ASSOCIATES

5
6
7
8
9
10

By _____
ARNOLDO CASILLAS
DENISSE O. GASTÉLUM
Attorneys for Plaintiffs,
ESTATE OF ERICK DE ANDA, by and
through successor in interest, Enrique de Anda
Garcia; ENRIQUE DE ANDA GARCIA,
individually

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**DEMAND FOR JURY TRIAL**

Plaintiffs ESTATE OF ERICK DE ANDA, by and through successor in interest, ENRIQUE DE ANDA GARCIA, ENRIQUE DE ANDA GARCIA, individually, hereby demand trial by jury.

Dated: September 12, 2017   CASILLAS & ASSOCIATES

         By _____
         ARNOLDO CASILLAS
         DENISSE O. GASTÉLUM
         Attorneys for Plaintiffs,
          ESTATE OF ERICK DE ANDA, by and
         through successor in interest, Enrique de Anda
         Garcia; ENRIQUE DE ANDA GARCIA,
         individually

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**